IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER L. CHATMAN,** | ) | CASE NO. 7:16CV00509 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| **HAROLD CLARKE, DIRECTOR, ET AL.,** | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Christopher L. Chatman, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that excluding him from access to email in prison violates his First Amendment rights. Upon review of the record, the court finds that the action must be summarily dismissed.

### Background

Chatman alleges the following sequence of facts related to his claims. Virginia Department of Corrections ("VDOC") officials have classified Chatman as Security Level S, long-term segregation. He has been incarcerated in a long-term segregation unit at Red Onion State Prison ("Red Onion") since April 7, 2016.

VDOC inmates were recently granted an opportunity to participate in a web-based program that allows them to send and receive secure email messages. Most inmates can receive or send such messages from a kiosk dedicated for the purpose, with postage-like stamps required for outgoing messages. Per the VDOC policy on inmate correspondence, "Secure messaging is a privilege. [O]ffenders assigned to a Special Housing Unit will not be provided access to the kiosk to retrieve or send their secure messages." (Compl. Ex. A, at 1, ECF No. 1-1.) This policy also provides: "Offenders assigned to long term segregation facilities will not have access to

kiosks but <u>may</u> access secure messaging" by facility mailroom staff printing and delivering messages to the offender through the facility mail." (Id.) (emphasis added).

In May 2016, Chatman filed a request for Red Onion mailroom staff to have copies of his incoming messages printed out and delivered to him, per VDOC policy. Defendant Shortridge, Red Onion's operations manager, responded: Special Housing Unit will not be provided access to kiosk." (Compl. 3, ECF No. 1.) Chatman then filed a grievance on the matter. In the Level I response, a supervisory official deemed the grievance unfounded and wrote:

> LOP 830.A establishes kiosk access as an incentive for Security Level "S" offenders to progress in the [Red Onion] Segregation Reduction Step-Down Program. Kiosk privileges are earned once Security Level "S" offenders have successfully completed the requirements of their assigned pathway (SM or IM), had a reduction in Security level from Security Level "S" to Security Level 6 and are housed in Step-Down Phase 1 or IM Closed pods. Due to your current Security Level "S" assignment, you do not have access to secure messages.

(Id. Ex., at 9, ECF No. 1-1.) Chatman appealed. At Level II, a regional administrator wrote:

> The Level I response from Red Onion State Prison is inappropriate. Procedural violations are noted. [OP] 803.1 Offender Correspondence is the governing authority.
>
> The decision of the Level I respondent is reversed to FOUNDED. The administrative remedy is to print out your messages and deliver them to you. Level II is the last level of appeal for this grievance.

(Id. Ex., at 10.) Nevertheless, Shortridge has continued to refuse to deliver Chatman's messages to him under Red Onion's Step-Down Procedure.

Chatman filed this § 1983 action against Shortridge, seeking declaratory, injunctive, and monetary relief. He also sues the Red Onion warden and the director of the VDOC for failing to ensure that he can receive his secure kiosk messages as provided by policy.

2

**Discussion**

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1). In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). While prisoners have a First Amendment right to communicate with the outside world, see Thornburgh v. Abbott, 490 U.S. 401, 411-12 (1989), they do not have a constitutional right to a particular form of communication, such as access to email. Edington v. Warden of FCI Elkton, No. 4:14CV2397, 2015 WL 1843240, at *3 (N.D. Ohio Apr. 22, 2015) (unpublished) (citing other cases).[1] Chatman clearly has the ability to communicate with the outside world through the regular mail, as he posted his § 1983 Complaint to the court. He has not been deprived of his First Amendment rights here.

---

[1] See, e.g., Bristow v. Amber, No. 2:12–cv–412, 2012 WL 1963577, at *2-3 (S.D. Ohio May 31, 2012) (prisoners do not have a First Amendment right to access email); Grayson v. Federal Bureau of Prisons, No. 5:11CV2, 2012 WL 380426, at *3 (N.D. W.Va. Feb. 6, 2012) ("[P]risoners have no First Amendment constitutional right to access email."); Rueb v. Zavaras, No. 09–cv–02817–REB–MEH, 2011 WL 839320, at *6 (D. Colo. Mar.7, 2011) ('[I]nmates have no established First Amendment right to access email."); Holloway v. Magness, No. 5:07cv88, 2011 WL 204891, at *7 (E.D. Ark. Jan. 21, 2011) ("[A]ssuming that the free speech clause of the First Amendment requires prisons to permit communication between prisoners and persons outside the prison, it does not follow that the First Amendment requires that the government provide telephones, videoconferencing, email, or any of the other marvelous forms of technology that allow instantaneous communication across geographical distances; the First Amendment is a limit on the exercise of governmental power, not a source of positive obligation on the part of the government.").

3

Moreover, to the extent that Red Onion's secure message restriction on Level S offenders infringes on Chatman's First Amendment right, nevertheless, the restriction is constitutional. It is well established that "some [First Amendment] rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" Shaw v. Murphy, 532 U.S. 223, 229 (2001) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)). Maintaining security, order, and discipline are essential goals of a corrections system, and prison officials, therefore, are accorded wide latitude in the adoption and application of prison policies and procedures. See Bell v. Wolfish, 441 U.S. 520, 546-47 (1979). "[B]ecause 'the problems of prisons in America are complex and intractable,' and because courts are particularly 'ill equipped' to deal with these problems, [courts] generally have deferred to the judgments of prison officials in upholding these regulations against constitutional challenge." Shaw, 532 U.S. at 229. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). To determine the reasonableness of a particular prison regulation, the court considers four factors:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action.

Lovelace v. Lee, 472 F.3d 174, 200 (quoting Turner, 482 U.S. at 89-92 (internal brackets omitted). Chatman bears the burden of "overcom[ing] the presumption that the prison officials acted within their broad discretion." Shaw, 532 U.S. at 232.

4

Red Onion's restriction on kiosk messages satisfies this <u>Turner</u> standard. The connection between the challenged regulation and prison interests is clear. Reserving for Security Level 6 offenders the privilege of receiving or sending kiosk messages furthers the prison's interest in offering Level S offenders an incentive to work toward achieving Level 6 status. Chatman retains, at a minimum, the alternative of regular mail as a means of exercising his right to communicate with those outside the prison. Lifting the restriction on kiosk messages would eliminate an important incentive to progress out of Level S status and would require Red Onion mail staff to expend more time and effort to print out secure messages for the many Level S inmates. Furthermore, Chatman fails to offer any obvious or easy alternatives to this restriction to achieve the same goals. Therefore, the court concludes that Red Onion's kiosk restrictions pass constitutional muster and survive Chatman's First Amendment challenge under § 1983.

Finally, Chatman's evidence of conflict between VDOC-wide inmate correspondence regulations and Red Onion's local program restriction of kiosk messaging presents, at most, a possible violation of VDOC policy. State officials' failure to abide by state procedural regulations is not a federal due process issue, and is, therefore, not actionable under § 1983. <u>Riccio v. Cnty. of Fairfax</u>, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").

**Conclusion**

For the reasons stated, the court dismisses Chatman's complaint without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 29th day of December, 2016.

                                                s/Glen E. Conrad
                                                Chief United States District Judge